David Hirson (California Bar #91507)
Evelyn Hahn (California Bar # 285846)
Megan Guzman (California Bar #316716)
mguzman@hirson.com
David Hirson and Partners, LLP
1122 Bristol Street, Floor 1
Costa Mesa, CA 92626
Telephone: (949) 383-5358
Facsimile: (949) 383-5368
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONSTER ENERGY CO. & Mohita YALAMANCHI,<br><br>                                   Plaintiffs,<br><br>          vs.<br><br>Kathy A. BARAN, in her Official Capacity, Director of the California Service Center, U.S. Citizenship and Immigration Services, U.S. Department of Homeland Security;<br><br>L. Francis CISSNA, in his Official Capacity, Director, U.S. Citizenship and Immigration Services, U.S. Department of Homeland Security; and<br><br>Kevin M. MCALEENAN, in his Official Capacity, Acting Secretary, U.S. Department of Homeland Security<br><br>                          Defendants. | Case No.: 5-19-cv-00871<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND REVIEW OF AGENCY ACTION UNDER THE ADMINISTRATIVE PROCEDURE ACT**<br><br><u>Immigration Case, Administrative Procedure Act Case</u> |

Complaint                                                                    Case No. 5:19-cv-00871

## I.    <u>INTRODUCTION</u>

1.    This action is brought pursuant to section 10b of the Administrative Procedure Act, 5 U.S.C. § 702, *et seq.*, seeking review of the United States Citizenship and Immigration Services' ("USCIS") decision dated April 1, 2019, denying Monster Energy Company ("Plaintiff 1," "Monster," or "Petitioner")'s Petition for a Nonimmigrant Worker (Form I-129, hereafter "H-1B petition") on behalf of Ms. Mohita Yalamanchi ("Plaintiff 2," "Ms. Yalamanchi," or "Beneficiary") for nonimmigration classification under section 101(a)(15)(H)(i)(B) of the Immigration and Nationality Act ("INA"). This action seeks to hold unlawful and set aside the decision on the grounds that it was arbitrary and capricious, inasmuch as Defendants ignored evidence on the record and failed to adhere to agency regulations and established evidentiary burdens.

## II.    <u>JURISDICTION</u>

2.    This Court has jurisdiction under 28 U.S.C. §§ 1331 (federal question jurisdiction), 1346(a)(2) (United States as a defendant), and 2201 (declaratory judgments). Additionally, 5 U.S.C. § 702 of the Administrative Procedure Act ("APA") waives sovereign immunity for the federal government, allowing the court to exercise jurisdiction over Defendants.

3. This civil action arises under several federal statutes and regulations, including the APA, 5 U.S.C. §§ 701-706; INA §§ 101(a)(15)(H), 214; 8 U.S.C. §§ 1101(a)(15)(H), 1184(i); and 8 C.F.R. § 214.2(h).

### III.  VENUE

4. Venue is proper pursuant to 28 U.S.C. § 1391(e) as Defendants are federal officials acting in their official capacity, the denial was issued from the USCIS California Service Center located in Laguna Niguel, California, where Defendant Kathy A. Baran resides in her official capacity, and both Plaintiffs reside in this judicial district.

### IV.  PARTIES

5. Plaintiff Monster is a subsidiary of Monster Beverage Corporation, established in 1930 with its headquarters located in Corona, California. The Monster Energy Drink segment sells ready-to-drink packaged beverages to bottlers and full-service distributors in approximately 128 countries and territories globally. At the time of filing the H-1B petition at issue, Monster employed approximately 2,500 workers in the United States with a gross annual income of $1.6 billion.

6. Plaintiff Ms. Yalamanchi is a 32-year-old citizen of India. Ms. Yalamanchi received her Bachelor of Engineering degree in Mechanical Engineering from Osmania University in India and went on to receive her Master of Science degree in Industrial Engineering from West Virginia University

while in valid nonimmigrant student status ("F-1"). Ms. Yalamanchi has maintained valid H-1B status since October 1, 2013. Prior to employment with Monster, Ms. Yalamanchi worked as a Business Systems Analyst – EDI with Deckers Outdoor Corporation DBA Deckers Brands from May 2014 until January 16, 2018 in valid H-1B status. Ms. Yalamanchi was offered $105,000 by Monster to work temporarily in H-1B status and was lawfully employed as a Technical Web Developer from January 17, 2018 until April 1, 2019, the date of te H-1B petition denial. Ms. Yalamanchi resides in Yorba Linda, California.

7.      Defendant Kathy A. Baran is sued in her official capacity as the USCIS Director of the California Service Center ("CSC"), located in Laguna Niguel, California. The CSC is the designated USCIS office authorized to receive and adjudicate H-1B petitions filed by employers in California. For official purposes, Ms. Baran resides in the judicial district for the Central District of California.

8.      Defendant L. Francis Cissna is sued in his official capacity as the Director of the U.S. Citizenship and Immigration Services ("USCIS"), located in Washington, District of Columbia. For official purposes, Mr. Cissna resides in the judicial district for the District of Columbia.

9.      Defendant Kevin M. McAleenan is sued in his official capacity as the Acting Secretary of Homeland Security located in Washington, District of

- 4 -

Columbia. For official purposes, Mr. McAleenan resides in the judicial district for the District of Columbia.

## V.     EXHAUSTION OF REMEDIES

10.    Plaintiffs may seek judicial review of an H-1B petition without first seeking an administrative appeal. *See Darby v. Cisneros,* 509 U.S. 139, 154 (1993); *see also EG Enterprises, Inc. v. Dep't of Homeland Sec.,* 467 F.Supp.2d 728, 733 (E.D. Mich. 2006) (Finding jurisdiction where plaintiff had not first appealed its H-1B petition denial to the Administrative Appeals Office before filing suit).

## VI.    LEGAL BACKGROUND

11.    INA § 101(a)(15)(H)(i)(b) allows admission to the United States for temporary workers sought by petitioning U.S. employers "to perform services…in a specialty occupation…". *See also* 8 U.S.C. § 1101(a)(15)(H)(i)(b). This is commonly known as the H-1B visa.

12.    A "specialty occupation" is defined as an occupation that requires the (A) theoretical and practical application of a body of highly specialized knowledge, and (B) attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States. *See* 8 U.S.C. § 1184(i)(1).

13.    Additionally, the requirements for a specialty occupation are:

(A) full state licensure to practice in the occupation, if such licensure is required to practice in the occupation,

(B) completion of the degree described in paragraph 1(B) for the occupation, or

(C) experience in the specialty equivalent to the completion of such degree, and recognition of expertise in the specialty through progressively responsible positions relating to the specialty. *See* 8 U.S.C. § 1184 (i)(2); *see also* INA § 214(i)(2).

14. Prior to filing the petition with USCIS, the U.S. employer must file a Labor Condition Application ("LCA") with the U.S. Department of Labor ("DOL"), in which the employer makes specific attestations meant to ensure the temporary foreign worker's employment will not have a negative effect on the wages and working conditions of a similarly-situated U.S. worker. *See* 8 U.S.C. §§ 1182(n)(1)(A)-(D). As part of this process, the employer may request a prevailing wage from the DOL online wage library, using a Standard Occupational Classification ("SOC") for the position, the job location, and a wage level determined by the education and experience requirements for the position. Once the DOL certifies the LCA, it is included with the H-1B petition filed with USCIS.

15. Under the concept of H-1B portability pursuant to Section 105 of AC 21, when a foreign worker is already in the United States as an employee of an

- 6 -

H-1B employer, the employee is able to start new employment for a new H-1B employer upon the employer's filing of an H-1B petition on behalf of the foreign worker. This also allows the foreign worker to begin working for the petitioning employer in valid H-1B status while USCIS adjudicates the petition. The employer is able to file the petition requesting for USCIS to approve the new H-1B status for the employee and the employer may concurrently request an extension of the employee's H-1B status in the petition. *See* INA 214(n), 8 U.S.C. 1184(n) and 8 C.F.R. § 214.2(h)(2)(i)(H). However, if the H-1B portability petition is denied, the foreign worker immediately loses her work authorization and H-1B status.

16.    USCIS regulations clarify that in order to qualify as a specialty occupation, the position must meet one of the following criteria:

(1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;

(2) The degree requirement is common to the industry in parallel positions among similar organizations, or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;

(3) The employer normally requires a degree or its equivalent for the position; or

(4) The nature of the specific duties is so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree. *See* 8 C.F.R. § 214.2(h)(4)(iii)(A)(1)-(4).

17.   Also, USCIS regulations provide that for a foreign national to qualify to perform services in a specialty occupation, one of the following criteria must be met:

(1) Hold a United States baccalaureate or higher degree required by the specialty occupation from an accredited college or university;

(2) Hold a foreign degree determined to be equivalent to a United States baccalaureate or higher degree required by the specialty occupation from an accredited college or university;

(3) Hold an unrestricted State license, registration or certification which authorizes him or her to fully practice the specialty occupation and be immediately engaged in that specialty in the state of intended employment; or

(4) Have education, specialized training, and/or progressively responsible experience that is equivalent to completion of a United States baccalaureate or higher degree in the specialty occupation, and have recognition of expertise in the specialty through progressively

responsible positions directly related to the specialty. *See* 8 C.F.R. § 214.2(h)(4)(iii)(C)(1)-(4).

## VII.   STATEMENT OF FACTS

18.   Plaintiffs hereby request this Court to enter declaratory and injunctive relief against Defendants, United States Citizenship and Immigration Services ("USCIS") and the Department of Homeland Security ("DHS") based on the improper, arbitrary denial of Plaintiffs' Petition for Nonimmigrant Worker (Form I-129, hereafter "H-1B petition"). Monster filed the H-1B petition on behalf of Ms. Yalamachi in order to employ her as its Technical Web Developer.

19.   Monster is a subsidiary of Monster Beverage Corporation, with its headquarters located in Corona, California. The Monster Energy Drinks segment sells ready-to-drink packaged drinks primarily to bottlers and full-service beverage distributors both domestically and globally. Monster employees approximately 2,500 employees in the United States and earned a gross annual income of $1.6 billion dollars in fiscal year 2016. Monster's goal in the coming year is to innovate and anticipate introducing new and exciting beverages and packaging for its products. *See* Exhibit F.

20.   Ms. Yalamachi is an Indian citizen who earned her advanced degree in the United States while in valid nonimmigrant student status. She received her Bachelor of Engineering degree in Mechanical Engineering in May 2008

Complaint                                                                 Case No. 5:19-cv-00871

from Osmania University in India. In May 2011, she received her Master of Science in Industrial Engineering from West Virginia University. *Id.*

21.   Prior to Monster's filing of its H-1B petition, Ms. Yalamanchi held valid H-1B status working for Deckers Outdoor Corporation DBA Deckers Brands as a Business Systems Analyst – EDI, from May 12, 2014 until January 16, 2018. Ms. Yalamanchi has always complied with the terms of her nonimmigrant status both as a student and employee. *Id*. Since Ms. Yalamanchi was in valid H-1B status at the time of Monster's filing the H-1B portability petition on her behalf, she was able to begin working for Monster as the Technical Web Developer while USCIS adjudicated the H-1B petition. *See* 8 C.F.R. § 214.2(h)(2)(i)(H).

22.   Under the INA, a United States employer may sponsor a foreign national temporarily to "perform services…in a specialty occupation." *See generally* INA § 214(h); *see also* 8 U.S.C. §§ 1101(a)(15)(H)(i)(b), 1184(c). An employer sponsors a foreign national by filing Form I-129, the H-1B petition, with USCIS. The H-1B visa category focuses on highly skilled, educated foreign nationals, and places them as employees in "specialty occupations" – those which require the theoretical and practical application of a body of highly specialized knowledge, along with a bachelor's or higher degree, or the equivalent of such, in a specific specialty.

23.    On December 13, 2017, Monster filed an H-1B petition on behalf of Ms. Yalamanchi, including a request for extension of her current H-1B status. *See* Exhibit E. Monster sought to employ Ms. Yalamanchi in the position of Technical Web Developer, which falls into the category of Software Development, Applications as defined by the U.S. Department of Labor ("DOL"). *See* Exhibit F. The Technical Web Developer is responsible for daily operational support and monitoring of the in-house EDI integration application platform (SEEBURGER) and EDI map development. Specifically, Ms. Yalamanchi would be maintaining and extending Monster's global infrastructure to exchange infrastructure with external parties in a consistent, standard electronic format. She would manage software patches, upgrades, and technical updates, as well as EDI MAP programming, document systems interfaces, and perform code testing and production level support. Monster requires an employee in the Technical Web Developer position to have at least a bachelor's degree in Computer Science, Engineering, or Information Technology. *Id*.

24.    To support the petition, Monster submitted a letter explaining in detail the position offered along with its associated job duties and responsibilities. The letter confirmed that the degree requirement for the position is "at minimum, a Bachelor's degree in Computer Science, Engineering, or Information Technology." *See* Exhibit F at 213. Monster also included the

relevant sections from an online source of occupational information published by the DOL, showing the position met the definition of "specialty occupation" provided under the INA. Additionally, Monster submitted evidence of Ms. Yalamanchi's qualifications for the position of Technical Web Developer, such as her degrees and her specific course transcripts from each degree. *Id.*

25.   On April 16, 2018, USCIS issued a Request for Evidence ("RFE"), claiming that Monster had not satisfied any of the regulatory criteria for the position to qualify as a specialty occupation, and that Ms. Yalamanchi was not qualified to perform the duties of the position.[1] *See* Exhibit D.

26.   Monster submitted a timely response to the RFE, providing additional evidence that sufficiently demonstrated the proffered position qualifies as a specialty occupation, and that Ms. Yalamanchi was qualified to perform in the position. Specifically, Monster included an offer letter from its Senior Human Resources Director – Global, describing in detail the services to be performed in the position, showing the duties, percentage of time spent on each duty, degree required to complete each duty, and how Ms. Yalamanchi's education met those requirements. Monster also included a letter from their Director of Business Systems Planning and Project

---

[1] While other issues were raised in the RFE, USCIS found them satisfactorily resolved at the time of denial.

Complaint                                                               Case No. 5:19-cv-00871

Management describing the skills required to perform the offered job, the tools needed to perform, the services to be provided, and the work available through the requested H-1B period. These letters were provided among other evidence of Monster's hierarchy, staffing, production space, and other supporting documents establishing the degree requirement for the position and that Technical Web Developer is a specialty occupation. *See* Exhibit C.

27.     Additionally, Monster provided three (3) expert opinion letters – two (2) from Dr. Sotirios Skevoulis, Professor in the Computer Science Department and Chair of the Software Engineering program at Pace University confirming that the Technical Web Developer position requires at least a bachelor's degree in Computer Science, Information Technology, Engineering, or a closely related field, and another evaluating Ms. Yalamanchi's education and experience as equivalent to a bachelor's degree in Computer Information Systems and finding that her education and experience qualified her for the proffered position; the third letter was from Dr. Pratap P. Reddy, Professor of Computer Science at Raritan Valley Community College, and it evaluated Ms. Yalamanchi's degrees as equivalent to a four-year U.S. bachelor's degree in Computer Information Systems. *Id.*

28.     On April 1, 2019, USCIS denied Monster's H-1B petition for Ms. Yalamanchi. USCIS erroneously determined that Monster had not proved

that the proffered position of Technical Web Developer is a specialty occupation in accordance with 8 C.F.R. § 214.2(h)(4)(iii)(A). Additionally, USCIS erroneously found that Ms. Yalamanchi's education and experience did not qualify her to perform the duties of the proffered position, arguing that industrial and mechanical engineering do not directly relate to the duties and responsibilities of the proffered position. USCIS also denied the request for extension of status since the H-1B petition was denied. *See* Exhibit A.

29. In denying the H-1B petition, USCIS ignored substantially probative evidence of the position's job duties and responsibilities, its complexity, and how this substantiates Monster's degree requirement in a specific field. USCIS also ignored the expert letters provided regarding the position and Ms. Yalamanchi's degrees and her qualifications for the position. *Id.* This constitutes a misapplication of the law and misinterpretation of the facts presented on the record. Defendants' actions were arbitrary, capricious, and contrary to the law under the Administrative Procedure Act ("APA"). Therefore, Plaintiffs request that the Court vacate the denial and approve the H-1B petition to ensure that USCIS cannot continue to erroneously deny petitions for similar computer technology positions contrary to the APA and relevant immigration law.

# VIII. <u>CAUSE OF ACTION</u>

<u>Administrative Procedure Act</u>

30.   Plaintiffs re-allege and incorporate herein by reference, as if fully set forth herein, the allegations in paragraphs 1-29 above.

31.   Under 5 U.S.C. § 706(2), the Court shall "hold unlawful and set aside agency action … found to be – (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; [or] (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."

32.   This cause of action is brought against Defendants Baran, Cissna, and McAleenan in their official capacities as the parties responsible for the adjudication of Monster's H-1B petition on behalf of Ms. Yalamanchi to temporarily employ her as the company's Technical Web Developer.

33.   USCIS's decision to deny Monster's petition is arbitrary and capricious, as it completely disregards the letters by Monster in support of the petition, ignores and misapplies the evidentiary weight of the expert opinions provided, and does not consider the supporting evidence. In reaching its conclusions about the evidence provided, USCIS misapplied the relevant regulations; impermissibly imposed evidentiary requirements outside of what Congress set forth; and erroneous concluded that the position was not

a specialty occupation, and that Ms. Yalamanchi was not qualified for the position of Technical Web Developer.

34.    In denying the petition, USCIS rejected all of the evidence set forth to establish the four alternative regulatory criteria by which the Technical Web Developer position qualifies as a specialty occupation, even though only one criterion needs to be met and Monster provided evidence for each of the four criteria.

35.    The denial of Monster's petition was arbitrary and capricious, as it was not supported by the evidence on the record and should be reversed as a violation of 5 U.S.C. § 706 (APA).

## IX.    REQUEST FOR RELIEF

WHEREFORE, Plaintiffs Monster Energy Co. and Ms. Yalamanchi pray that the Court:

1.    Declare Defendants' decision that the evidence submitted by Plaintiffs was insufficient to establish that the position of Technical Web Developer is not a specialty occupation, and that Ms. Yalamanchi was not qualified for the position, was arbitrary and capricious, and contrary to law in violation of the APA, 5 U.S.C. § 706(2)(A), the INA and the regulations;

2.    Vacate the denial of Plaintiffs' H-1B petition dated April 1, 2019, and order Defendants to take the appropriate corrective

action, including but not limited to approving the H-1B petition and extending Ms. Yalamanchi's H-1B status;

3.      Award Plaintiffs their costs in the action; and

4.      Grant such further relief, including injunctive relief, as the Court deems just and proper.

Dated: May 8, 2019                                    Respectfully submitted,

                                                      /s/ Megan Guzman

                                                      Megan Guzman

                                                      David Hirson

                                                      Evelyn Hahn

                                                      Attorneys for Plaintiffs