David Hirson (California Bar #91507)
Evelyn Hahn (California Bar # 285846)
Megan Guzman (California Bar #316716)
mguzman@hirson.com
David Hirson and Partners, LLP
1122 Bristol Street, Floor 1
Costa Mesa, CA 92626
Telephone: (949) 383-5358
Facsimile: (949) 383-5368
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONSTER ENERGY CO. & Mohita YALAMANCHI,<br><br>　　　　　　　Plaintiffs,<br><br>vs.<br><br>Kathy A. BARAN, in her Official Capacity, Director of the California Service Center, U.S. Citizenship and Immigration Services, U.S. Department of Homeland Security;<br><br>L. Francis CISSNA, in his Official Capacity, Director, U.S. Citizenship and Immigration Services, U.S. Department of Homeland Security; and<br><br>Kevin M. MCALEENAN, in his Official Capacity, Acting Secretary, U.S. Department of Homeland Security<br><br>　　　　　　　Defendants. | Case No.: 5:19-cv-00871<br><br>**POINTS AND AUTHORITIES IN SUPPORT OF EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER AND FOR MOTION FOR PRELIMINARY INJUNCTION**<br><br>Immigration Case, Administrative Procedure Act Case |

**TABLE OF CONTENTS**

I.   INTRODUCTION

II.  STATEMENT OF FACTS AND CASE

III. LEGAL FRAMEWORK

IV.  ARGUMENT

   A. **PLAINTIFFS WARRANT A TEMPORARY RESTRAINING ORDER BECAUSE BOTH HAVE SHOWN THAT THEY WILL SUFFER IMMEDIATE AND IRREPARABLE HARM**

      1. Monster will suffer irreparable harm due to its unrecoverable loss of profits

      2. Ms. Yalamanchi will suffer irreparable harm through her loss of lawful status, unrecoverable loss of profits, and inability to pursue her application for extension of stay

   B. **PLAINTIFFS WARRANT A PRELIMINARY INJUNCTION**

      1. Plaintiffs strongly demonstrate they are likely to succeed on the merits of their complaint under the Administrative Procedures Act

      2. Plaintiffs will suffer irreparable harm absent relief

      3. The balance of equities and the public interest favor granting the injunction

V.   CONCLUSION

# TABLE OF AUTHORITIES

## Case law

Alliance for the Wild Rockies v. Cottrell,……………………………………………..10
    632 F.3d 1127 (9th Cir. 2011)

Dominguez v. Schwarzenegger,……………………………………………………..12
    596 F.3d 1087, 1097–98 (9th Cir. 2010)

Iowa Utils. Bd. V. FCC,……………………………………………………………….12
    109 F.3d 418, 426 (8th Cir. 1996)

Washington Capitals Basketball Club, Inc. v. Barry,……………………………….18
    419 F.2d 472, 476 (9th Cir. 1969)

Winter v. Natural Res. Def. Council, Inc.,…………………………………………..10
    55 U.S. 7, 10 (2008)

## Acts of Congress

Immigration and Nationality Act of 1990,…………………………………………..13
    Pub. L. 101-649, 104 Stat 4978, November 29, 1990

## United States Code

5 U.S.C. § 706(2)……………………………………………………………………15

## Code of Federal Regulations

8 C.F.R. § 214.2(h)(2)(i)(H)…………………………………………………………10

8 C.F.R. § 214.2(h)(4)(iii)(A)…………………………………………………………9

## Policy Memoranda

PM-602-0050.1, Updated Guidance for the Referral of Cases………………………14
    and Issuance of Notices to Appear (NTAs) in cases Involving
    Admissible and Deportable Aliens (June 28, 2018)

## I. INTRODUCTION

Plaintiffs Monster Energy Co., ("Plaintiff 1," "Monster," or "Petitioner"), and Ms. Mohita Yalamanchi ("Plaintiff 2," "Ms. Yalamanchi," or "Beneficiary") by and through undersigned counsel, here file this motion for temporary restraining order and preliminary injunction to compel the Department of Homeland Security ("DHS") and U.S. Citizenship and Immigration Services ("USCIS") to postpone the effects of the denial of Petitioner's Petition for a Nonimmigrant Worker (Form I-129, hereinafter "H-1B petition") and concurrent request for an extension of Beneficiary's prior H-1B status.

As demonstrated below, Plaintiff merits a temporary restraining order because Monster and Ms. Yalamanchi are suffering immediate and irreparable harm. If the effects of the petition's denial are not postponed through this motion, retroactive to the date of the denial on April 1, 2019, the denials will cost both Monster and Ms. Yalamanchi unrecoverable economic losses and Ms. Yalamanchi her ability to remain lawfully in the United States with work authorization. Effective immediately from the date of denial, Ms. Yalamanchi was automatically terminated from her position as Technical Web Developer with Monster. In this position, Ms. Yalamanchi was assisting with Monster's global roll-out of EDI services with its partners in its supply chain since her date of hire on January 17, 2018. Unfortunately, as of April 1, 2019,

1  Monster no longer has a Technical Web Developer to replace Ms. Yalamanchi and is
2  thus suffering immediate and irreparable harm.
3     Additionally, Plaintiffs meet the standard for a preliminary injunction. As
4  demonstrated below, Monster and Ms. Yalamanchi are suffering and will suffer further
5  irreparable harm without accurate, lawful review of the H-1B petition, as Monster is
6  currently operating without a crucial employee, and Ms. Yalamanchi is unable to be
7  employed. Balancing the equities and the public interest also weigh in Plaintiffs' favor,
8  as Plaintiffs provided substantial evidence warranting approval of the H-1B petition,
9  while proper implementation of federal law is in the public interest.

## II.   STATEMENT OF FACTS AND CASE

Monster and Ms. Yalamanchi bring the current action to ask the Court to enter declaratory and injunctive relief against the Defendants due to the denials of the H-1B petition and request for extension of status filed by Monster on behalf of their employee, Ms. Yalamanchi.

Plaintiff Monster is one of several subsidiaries wholly owned by the holding company, Monster Beverage Corporation, with its headquarters located in Corona, California. *See* Declaration of Evelyn Hahn in Support of Ex Parte Motion for Temporary Restraining Order and For Motion for Preliminary Injunction ("EH Dec.") at 2. The Monster Energy Drinks segment generates net operating revenues by selling ready-to-drink packaged drinks primarily to bottlers and full-service beverage

distributors. *Id*. Monster Energy drinks are now sold in approximately 128 countries and territories around the world. *Id*.

On December 13, 2017, Monster filed an H-1B petition on behalf of Ms. Yalamanchi, a citizen and national of India, in order to employ Ms. Yalamanchi as a Technical Web Developer (Software Developer, Applications). EH Dec. at 3. In this position, Ms. Yalamanchi would be employed and paid by Monster, and would work from a Monster office located in Corona, California. *Id*. Ms. Yalamanchi would be directly supervised by Ms. Kate Webb, the Director of Business Systems Planning and Project Management at Monster. *Id*. As part of her job duties, she would be responsible for daily operational support and monitoring of the in-house EDI integration application platform (SEEBURGER) and EDI map development. *Id*. Specifically, Ms. Yalamanchi would be maintaining and extending Monster's global infrastructure to exchange infrastructure with external parties in a consistent, standard electronic format. *Id*. She would manage software patches, upgrades, and technical updates, as well as EDI MAP programming, document systems interfaces, and perform code testing and production level support. *Id*. In support of the petition, Monster included a letter explaining in detail the position offered along with its associated job duties and responsibilities, among other documents. *Id*. Additionally, Monster submitted evidence of Ms. Yalamanchi's qualifications for the position of Technical Web Developer, including her Bachelor of Engineering degree in Mechanical Engineering from Osmania University in India, her Master of Science degree in Industrial Engineering

from West Virginia University, and her specific course transcripts with each degree. *Id.*

Since Ms. Yalamanchi was in H-1B status at the time Monster filed the petition on her behalf, she could start working at Monster as a Technical Web Developer while USCIS adjudicated her petition, which she did. EH Dec. at 4. Ms. Yalamanchi had previously been working as a full-time Business Systems Analyst – EDI with Deckers Outdoor Corporation DBA Deckers Brands in H-1B status. *Id.* As of January 17 2018, Ms. Yalamanchi has been working with Monster to implement a multi-faceted, large global roll-out of EDI services with all of Monster's partner relationships. *Id.* As Technical Web Developer, Ms. Yalamanchi has managed the technical server instance of SEEBurger application(s) that the Monster Global EDI Enterprise relies upon for a major percentage of revenue (order processing). *Id.* Since starting, Ms. Yalamanchi's ability to predict, evaluate the expected results of system processes, and understand data hierarchy within the EDI maps as well as the SAP IDOCs has improved and shortened the Monster EDI map development time from when Monster outsourced the EDI platform, EDI maps and processes with third-party companies. *Id.*

On April 16, 2018, USCIS issued a request for evidence ("RFE"). EH Dec. at 5. In the RFE, USCIS stated that it found that Monster had not demonstrated Ms. Yalamanchi would be performing in-house employment and requested further evidence of any in-house projects. *Id.* Next, USCIS concluded that the offered position of Technical Web Developer (Software Developers, Applications) was not a specialty

occupation because the duties and responsibilities described were insufficient to determine whether the position requires a baccalaureate degree in a specific field of study. *Id.* USCIS also stated that Monster had not established that the offered position was a specialty occupation because their reading of O*NET indicated that the position of Technical Web Developer (Software Developers, Applications) does not require a bachelor's level of education or its equivalent in a specific specialty as a normal, minimum entry requirement for the occupation.[1] *Id.* Additionally, USCIS took issue with Monster's required educational background, finding that the proffered position does not have a bachelor's or higher degree in a specific specialty as the normal minimum requirement for entry into the position. *Id.* Finally, USCIS did not find that Monster had included evidence that Ms. Yalamanchi was eligible to extend her H-1B status beyond the statutory limit of six (6) years. *Id.* USCIS invited Monster to provide additional evidence of Monster's in-house projects, that the position of Technical Web Developer was a specialty occupation, that the position normally requires a bachelor's degree or higher, and that Ms. Yalamanchi could extend her H-1B status beyond the statutory limit of six (6) years. *Id.*

On July 12, 2018, Monster filed a response to USCIS's RFE with a cover letter and new, supporting documentation. EH Dec. at 6. Monster included an offer letter from its Senior Human Resources Director – Global, describing in detail the services

---

[1] O*NET is the primary source of occupational information developed under the sponsorship of the US Department of Labor. For further information, *see* https://www.onetcenter.org/overview.html.

to be performed in the position, showing the duties, percentage of time spent on each duty, degree required to complete each duty, and how Ms. Yalamanchi's education met those requirements. *Id.* Monster also included a letter from their Director of Business Systems Planning and Project Management describing the skills required to perform the offered job, the tools needed to perform, the services to be provided, and the work available through the requested H-1B period. *Id.* These letters were provided among other evidence of Monster's hierarchy, staffing, production space, and other supporting documents establishing the degree requirement for the position and that Technical Web Developer is a specialty occupation. *Id.*

Additionally, Monster provided three (3) expert opinion letters – two (2) from Dr. Sotirios Skevoulis, Professor in the Computer Science Department and Chair of the Software Engineering program at Pace University confirming that the Technical Web Developer position requires at least a bachelor's degree in Computer Science, Information Technology, Engineering, or a closely related field, and another evaluating Ms. Yalamanchi's education and experience as equivalent to a bachelor's degree in Computer Information Systems and finding that her education and experience qualified her for the proffered position; the third letter was from Dr. Pratap P. Reddy, Professor of Computer Science at Raritan Valley Community College, and it evaluated Ms. Yalamanchi's degrees as equivalent to a four-year U.S. bachelor's degree in Computer Information Systems. EH Dec. at 7. Finally, Monster provided the requested proof that Ms. Yalamanchi could extend her H-1B status beyond the statutory six-year limit. *Id.*

On April 1, 2019, USCIS denied Monster's H-1B petition on behalf of Ms. Yalamanchi. EH Dec. at 8. A copy of the decision is attached as Complaint Exhibit A. USCIS determined that Monster had not proved that the proffered position of Technical Web Developer is a specialty occupation in accordance with 8 C.F.R. § 214.2(h)(4)(iii)(A). *Id.* Additionally, USCIS found that Ms. Yalamanchi's education and experience did not qualify her to perform the duties of the proffered position, because USCIS alleges that industrial and mechanical engineering do not directly relate to the duties and responsibilities of the proffered position. *Id.*

Due to USCIS's denial, Ms. Yalamanchi no longer has valid H-1B status nor work authorization. EH Dec. at 9. As of the denial on April 1, 2019, Ms. Yalamanchi could no longer work at Monster in the position of Technical Web Developer. *See also* 8 C.F.R. § 214.2(h)(2)(i)(H). *Id.* Ms. Yalamanchi's spouse currently resides in the United States in valid H-1B status, but Ms. Yalamanchi no longer has any valid status to remain with her husband during the pendency of these proceedings, nor can she apply for an H-4 change of status application as the dependent of her spouse because she does not have any valid status to change from. *Id.*

Due to Ms. Yalamanchi's absence, Monster is suffering immediate and irreparable harm. EH Dec. at 10. As stated above, Monster is actively underway on a multi-faceted and large global roll-out of EDI services with all of their partner relationships. *Id.* EDI mapping and management is a distinct skillset and technical position within the Monster Energy organization. *Id.* The position and department

support the global transmission of business documents in a standard and consistent format. *Id.* Without the impact and contribution of Ms. Yalamanchi's EDI role, and the loss of her knowledge in this area, Monster would suffer a significant negative impact as they further automate their global supply chain. *Id.*

## III. LEGAL FRAMEWORK

On a motion for preliminary injunction, the Court balances the following factors: (1) the movant's showing likelihood to succeed on the merits, (2) likelihood of irreparable harm to the movant absent the injunction, (3) balancing the equities weighs in the movant's favor, and (4) the injunction is in the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 55 U.S. 7, 10 (2008). While *Winter* increased the standard to demonstrate irreparable harm from "possibility" to "likelihood," the Ninth Circuit also uses a "sliding scale" approach in determining whether a preliminary injunction should be issued. *See Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127 (9th Cir. 2011). Under this approach, if a movant can demonstrate that there are "serious questions" going to the merits, then a preliminary injunction is warranted so long as the balance of hardships weighs strongly in favor of the movant, and the remaining factors are satisfied. *Id*. At 1135.

A motion for temporary restraining order ("TRO") is warranted if "immediate and irreparable injury, loss, or irreversible damage will result" if the order is not granted. Fed. R. Civ. P. 65(b). The court applies the same factors in evaluating a TRO as those used in evaluating a preliminary injunction.

## IV. ARGUMENT

### A. PLAINTIFFS WARRANT A TEMPORARY RESTRAINING ORDER BECAUSE BOTH HAVE SHOWN THAT THEY WILL SUFFER IMMEDIATE AND IRREPARABLE HARM

#### 1. Monster will suffer irreparable harm due to its unrecoverable loss of profits

Since the date of the denial on April 1, 2019, Monster has been suffering irreparable harm without Ms. Yalamanchi's highly specialized knowledge and skill as Technical Web Developer in their roll-out of the EDI systems to their global partners. Monster has not been able to replace Ms. Yalamanchi and is suffering loss of profits every week she is absent. The time and expense it would take to train someone to be proficient at Ms. Yalamanchi's position would also require a director or supervisor on the team, like Ms. Webb, to take time away from her important duties to oversee this process, as the EDI mapping and maintenance is a critical component of Monster's technical operations. This would cause an added loss of profits as Ms. Webb would be away from her normal duties and Monster would need to pay to hire a new employee, or alternatively, to outsource the position while training someone new.

These financial losses are irreparable harm, as USCIS and DHS's sovereign immunity forecloses the possibility of reimbursement should Plaintiffs prevail in the litigation. *See Dominguez v. Schwarzenegger*, 596 F.3d 1087, 1097–98 (9th Cir. 2010) (affirming the grant of a preliminary injunction where reduction in a providers'

wages and benefits would cause financial injury, and providers could not recover due to State immunity); *see also Iowa Utils. Bd. V. FCC*, 109 F.3d 418, 426 (8th Cir. 1996) (finding that threat of unrecoverable economic loss is irreparable harm).

      2.  Ms. Yalamanchi will suffer irreparable harm through her loss of lawful status, unrecoverable loss of profits, and inability to pursue her application for extension of stay

  Ms. Yalamanchi will also suffer irreparable harm, as she no longer has status to lawfully remain in the United States and continue working as a result of the denial. First, the denial has caused Ms. Yalamanchi financial harm, as she is unable to work for Monster or any other employer without lawful immigration status. Ms. Yalamanchi was receiving an annual salary of $105,000 from Monster, meaning that she will lose about $2,000 each week she is not working. Just as the financial loss to Monster is an irreparable harm, it is likewise an irreparable harm for Ms. Yalamanchi as well.

  Next, according to chapter 40.9.2(a)(3)(A) of the Adjudicator's Field Manual ("AFM"), a foreign national is considered "unlawfully present" after the period of authorized stay expires. Ms. Yalamanchi's period of authorized stay expired the date her application for extension of status was denied. Under INA § 212(a)(9)(B), if a foreign national is unlawfully present for more than 180 days and subsequently departs the United States, she will be barred from returning to the United States for three (3) years. Additionally, consular officers at U.S. Embassies and Consulates

abroad can take into consideration any period of accrued unlawful presence in their decisions on U.S. visa applications. As a result, Ms. Yalamanchi must leave the United States as soon as possible, to avoid accruing additional unlawful presence time, which may impact her future ability to obtain a U.S. visa, and she must leave the United States before September 28, 2019 in order to avoid triggering the three year bar on entering the United States. This would force Ms. Yalamanchi to be separated from her husband, who is lawfully working and must continue to work in the United States in H-1B status, until she is able to receive a new visa abroad and would effectively abandon her extension of status application that is being challenged in this suit. Additionally, since Ms. Yalamanchi is currently in the United States without status, she is at risk of being detained and placed in removal proceedings without a temporary restraining order delaying the effects of the decision.

According to a USCIS policy memorandum dated June 28, 2018, USCIS has authority to issue a Notice to Appear ("NTA") for proceedings before an immigration court if, upon issuance of an unfavorable decision on a petition, the foreign national will be unlawfully present in the United States.[2] Thus, Ms. Yalamanchi is at risk of

---

[2] *See* USCIS PM-602-0050.1 (Jun. 28, 2018) at
https://www.uscis.gov/sites/default/files/USCIS/Laws/Memoranda/2018/2018-06-28-PM-602-0050.1-Guidance-for-Referral-of-Cases-and-Issuance-of-NTA.pdf

being placed in removal proceedings now that the 33-day period allowed for appeal of the denial to the USCIS Administrative Appeals Office has lapsed.[3]

Therefore, Ms. Yalamanchi has suffered irreparable harm, and will continue to suffer irreparable harm without the requested temporary restraining order.

B. PLAINTIFFS WARRANT A PRELIMINARY INJUNCTION

1. Plaintiffs strongly demonstrate they are likely to succeed on the merits of their complaint under the Administrative Procedures Act

In addition to the temporary restraining order, Plaintiffs warrant a preliminary injunction as they are likely to succeed on the merits. Under the Administrative Procedure Act, the Court must hold unlawful and set aside any agency action that is "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; [or] (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2).

Here, Defendants acted arbitrarily and capriciously when they denied Plaintiffs' H-1B petition on the grounds that the Technical Web Developer position is not a specialty occupation, and that Ms. Yalamanchi is not qualified to perform the

---

[3] *See* AAO Practice Manual, Ch. 3.7(c), at https://www.uscis.gov/about-us/directorates-and-program-offices/administrative-appeals-office-aao/practice-manual/chapter-3-appeals

- 12 -

duties of the proffered position. Defendants committed gross errors in fact and law when they denied Plaintiffs' H-1B petition.

First, Defendants rejected all submitted evidence regarding specialty occupation, and erroneously found that Plaintiffs had not established any of the four criteria for the proffered position to qualify as a specialty occupation. Defendants assert that the list of proposed duties provided are "generally described," despite letters in both the original submission and RFE response that described the job duties in detail with percentage of time spent on each duty and a description of how Ms. Yalamanchi's educational courses prepared her to perform each duty of the position. *See* Complaint Exhibits C and F. Further, Defendants stated that a nexus is required between the degree and position, and that Plaintiffs did not show how industrial engineering and mechanical engineering, or their relevant curriculum, relate to the position. However, the previously mentioned letters showed how Ms. Yalamanchi's specific courses and degrees related to the position and prepared her to perform the necessary, complex duties effectively. Despite this evidence, Defendants used "generalized duties" as a means to find that all four regulatory criteria on specialty occupation could not be met. *Id*.

Next, Defendants incorrectly argued that because the O*NET description for Software Developer, Applications states, "Most of these occupations require a four-year degree, but some do not," a degree in a specific specialty is not a "normal, minimum requirement for entry." *See* Complaint Exhibit A. Plaintiffs argue that

"normally" and "most" are congruent standards that demonstrate a degree is required for the position. The O*NET description for the position further specifies that 80% of positions require a bachelor's degree and 16% require a master's degree, meaning only 4% of positions do not have a specific degree requirement. Additionally, the U.S. Department of Labor's Occupational Outlook Handbook ("OOH") description for Software Developers states, "Software developers usually have a bachelor's degree, typically in computer science, software engineering, or a related field." *See* Complaint Exhibit C and F. Thus, a specific specialty is normally required for the position, both by industry standards and by Monster. Defendants' conclusions here were arbitrary, capricious, and a misapplication of the law.

As further evidence, Plaintiffs provided job postings for similar positions to show the normal degree requirement in the industry, as requested by Defendants in the RFE. *See* Complaint Exhibit D. However, Defendants improperly dismissed the submitted job postings as insufficient evidence of a degree requirement in parallel positions for employers in similar organizations. Additionally, Plaintiffs provided an expert opinion evaluating the position as a specialty occupation. *See* Complaint Exhibit C. However, Defendants improperly dismissed this as well, as a result of their misinterpretation and misapplication of the legal standard required for expert opinions.

Finally, Defendants appear to use boilerplate language in the denial, referring to the requirements of an "employment agency" at one point, when all evidence

provided has shown that Ms. Yalamanchi is directly employed by Monster. Defendants conclude that the duties provided do not require the specialized skills associated with a bachelor's degree or higher, contrary to the evidence on the record.

Regarding Ms. Yalamanchi's qualifications to perform the specialty occupation, Defendants erroneously found that she was not qualified to perform the duties of the proffered position. Specifically, it concluded that Ms. Yalamanchi's education does not correspond directly to a U.S. bachelor's degree in a required specialty, the degrees Ms. Yalamanchi has earned do not closely relate to the computer science field, and the degrees do not directly relate to the duties and responsibilities of the proffered position. However, Plaintiffs demonstrated in the original petition and the RFE response that Ms. Yalamanchi's educational background met the company's established degree requirement for the position and in addition to that, Plaintiffs provided degree evaluations showing that Ms. Yalamanchi's degrees and experience have been evaluated as equivalent to a U.S. bachelor's degree in Computer Information Systems. Further, Plaintiffs provided Ms. Yalamanchi's employment letters, resume, and the evaluations described above as requested by Defendants in the RFE, but all were disregarded so that Defendants could conclude Ms. Yalamanchi was not qualified for the proffered position.

Based on the above, Plaintiffs have demonstrated that they are likely to succeed on the merits and thus warrant a preliminary injunction.

2. Plaintiffs will suffer irreparable harm absent relief

As demonstrated above under the request for temporary restraining order, both Plaintiffs have demonstrated that they will suffer irreparable harm absent injunctive relief during the pendency of the judicial proceedings. In addition to Plaintiffs' irreparable harm, it is noted that Defendants would suffer no harm if this order is granted. Defendants would not have to take any affirmative action, as Ms. Yalamanchi would be considered back in status and allowed to work with the postponement of the denial's effects. As such, the scales tip in Plaintiffs' favor when weighing the harms suffered by all parties.

3. The balance of equities and the public interest favor granting the injunction

Finally, the equities described above and the public interest favor granting the injunction in favor of Plaintiffs. The purpose of a preliminary injunction has long been recognized as a tool to preserve the status quo during the pendency of proceedings. *See Washington Capitals Basketball Club, Inc. v. Barry,* 419 F.2d 472, 476 (9th Cir. 1969). Granting the postponement would most effectively maintain the status quo as it would be putting Plaintiffs back in the positions they previously maintained prior to Defendants' erroneous denial.

Failure to postpone the effects of the denial would require Ms. Yalamanchi to leave the country so that she does not continue to accrue unlawful presence, causing her to be separated from her family and without an immediate way to return to the

United States. As stated above, the importance of family unity has always been recognized and valued in immigration law. Therefore, the public interest weighs in favor of preserving families along with allowing the continuance of lawful business in the United States. Finally, given that Defendants' denial is contrary to the evidence on the record as explained above, it is in violation of the APA. Public interest supports holding government agencies accountable to properly uphold and carry out federal law.

## V.  CONCLUSION

Based on the above, Plaintiffs respectfully request this Court find that a temporary restraining order and preliminary injunction is warranted and order that Defendants immediately postpone the effects of Plaintiffs' H-1B petition denial and concurrent application for extension of status.

Dated: May 8, 2019

Respectfully submitted,

*s/ Megan Guzman*

Megan Guzman

David Hirson

Evelyn Hahn

Attorneys for Plaintiffs