NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section
DAVID PINCHAS (Cal Bar No. 130751)
Assistant United States Attorney
    Federal Building, Suite 7516
    300 North Los Angeles Street
    Los Angeles, California 90012
    Telephone: (213) 894-2920
    Facsimile: (213) 894-7819
    E-mail: david.pinchas@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| MONSTER ENERGY CO., et al., | Case No. ED CV 19-00871 JGB (KKx) |
| Plaintiffs, | |
| v. | |
| KATHY A. BARAN, et al., | |
| Defendants. | |

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF DAVID PINCHAS

## I. INTRODUCTION

This case presents no time-sensitive emergency. Plaintiff Monster Energy Company ("Monster"), is a beverage company headquartered in Corona, California which employs approximately 2,500 workers and claims gross annual income of $1.6 billion. See Complaint at ¶ 5. (Dkt # 6.) Monster filed a petition for a nonimmigrant worker, on behalf of co-plaintiff Mohita Yalamanchi, seeking to extend Ms. Yalamanchi's H-1B status to work on a temporary basis for Monster as a software developer. Id. ¶ 6. See 8 U.S.C. § 1101(a)(15)(H)(i)(b). On April 1, 2019, United States Citizenship and Immigration Services' ("USCIS") issued a decision denying the petition.

Instead of filing a noticed motion for a preliminary injunction pursuant to Central District Local Rule 7, the Plaintiffs waited over one month to file this action on May 8, 2019, and until May 9, 2019, to file the instant motion, on an emergency *ex parte* basis, to "postpone the effects of the denial" of Monster's application. (Dkt # 6-1, 6-4.)

For the reasons set forth below, Defendants Kathy A. Baran, Director of USCIS' California Service Center, L. Francis Cissna, Director of USCIS, and Kevin M. McAleenan, Acting Secretary of the Department of Homeland Security, sued in their official capacities as officers of the United States (collectively, "Defendants"), request that the Court deny Plaintiffs' emergency temporary motion for a restraining order and allow this case to proceed with a properly noticed motion for a preliminary injunction.

## II. STANDARD OF REVIEW

A preliminary injunction is an extraordinary remedy that is never awarded as of right. See Winter v. Natural Resources Defense Council, 555 U.S. 7, 24 (2008). Rather, Plaintiffs must establish that they are likely to succeed on the merits, are likely to suffer imminent irreparable harm, that the balance of equities tips in their favor, and that an injunction is in the public interest." Id., 555 U.S. at 20.

In addition, a motion for preliminary injunction that seeks mandatory relief "is subject to heightened scrutiny and should not be issued unless the facts and law clearly

favor the moving party." Dahl v. HEM Pharmaceuticals Corp., 7 F.3d 1399, 1403 (9th Cir. 1993) (citing Anderson v. United States, 612 F.2d 1112, 1114 (1979)).

## III. ARGUMENT

### A. Plaintiffs Should Not be Rewarded for their Delay in Bringing this Motion

As this Court has recognized, "the purpose of a temporary restraining order is to preserve the status quo and prevent irreparable harm until a hearing may be held on the propriety of a preliminary injunction." Chanel v. Sunus Online Group, LLC, 2013 WL 12113996 at * 1 (C.D. Cal. Dec. 5, 2013). Furthermore, Plaintiffs must show that they were without fault in creating the crisis necessitating the bypass of regular motion procedures. Id. (citing Mission Power Energy Corp. v. Cont'l Gas Co., 883 F.Supp. 488, 492-93 (C.D. Cal. 1995)).

Plaintiffs have not satisfied their burden on this *ex parte* motion. Had Plaintiffs not delayed over one month to file this action, they could have filed a noticed motion pursuant to the requirements of Central District Local Rule 7 and given the Defendants, and the Court, proper notice of this motion. Here, Plaintiffs have failed to demonstrate that they should be allowed to "go to the head of the line in front of all other litigants and receive special treatment." Id. Thus, Plaintiffs should not be rewarded for their delay and should be required to file a properly noticed motion for a preliminary injunction within the next 30 days.

Indeed, Plaintiffs' delay in seeking relief also undermines their motion when one considers that Plaintiff Yalamanchi could have filed an application for an H-4 visa; such visas allow an alien spouse and minor children of the holder of an H-1B visa to reside in this country with the H-1B visa holder. See 8 U.S.C. § 1101(a)(15)(H). There is no dispute that Plaintiff's husband is the holder of an H-1B visa. See Motion at 7:15-16; Declaration of Evelyn Hahn ¶ 9 ("Ms. Yalamanchi's spouse currently resides in the United States in H-1B status"). (Dkt # 6-3.) With an H-4 visa, Plaintiff could then seek employment authorization in this country pursuant to 8 C.F.R. § 214.2(h)(9)(iv).

To the extent Plaintiffs argue that Yalamanchi would have to leave the country for a few months to apply for this visa, this is not necessarily accurate. Rather, under the provisions of 8 C.F.R. § 248.1(b), Plaintiff Yalamanchi could still seek to change her nonimmigrant status within the United States, if she could demonstrate that she meets the requirements to excuse an untimely filed application for such a change of status, including that the failure to file a timely application was beyond her control, and that a favorable exercise of discretion by USCIS is warranted. Importantly, for purposes of this motion, there is no indication in the Complaint, nor in the motion itself, that Plaintiffs ever attempted to avail themselves of such remedies before they filed this belated motion for extraordinary relief. This failure to even explore such relief creates the very emergency from which Plaintiffs seek to justify bypassing Local Rule 7.

### B. Plaintiffs Have Not Established Imminent Irreparable Harm

Plaintiffs' delay in bringing this action should also be considered with respect to Plaintiffs' burden of establishing imminent irreparable harm. See Chanel, 2013 WL 12113996 at * 2 (citing cases); Fund for Animals v. Frizzell, 530 F.2d 982, 987(D.C. Cir. 975) (unexcused delay in seeking injunctive relief implies a lack of urgency and irreparable harm); Open Top Sightseeing USA v. Mr. Sightseeing, LLC, 48 F.Supp.3d 87 (D.D.C. 2014) (same); Caribbean Marine Services. Co. v. Baldrige, 844 F.2d 668, 674 (9th Cir. 1988) (the threat of irreparable harm must be immediate).

In addition, Plaintiffs' private attorney alleges in her declaration that Monster is suffering from immediate and irreparable harm allegedly because without Ms. Yalamanchi, the company would suffer a "significant negative impact as they further automate their global supply chain." Declaration of Evelyn Hahn ¶ 10. Ms. Hahn's declaration lacks foundation and is based on hearsay. Thus, Defendants object to the allegations of harm to Monster and paragraph 10 of the Hahn Declaration pursuant to Federal Rules of Evidence 602, 802, 805. See Bank Melli Iran v. Pahlavi, 58 F.3d 1406, 1412-13 (9th Cir. 1995) (a declaration of an attorney must establish personal knowledge, not knowledge based on hearsay).

Monster fails to make the necessary showing of irreparable harm because it is implausible that the loss of one programmer to this billion dollar company would cause irreparable damage. Indeed, as explained in the attached declaration of undersigned defense counsel, an internet search of online employment positions offered by Monster shows no position comparable to that of Ms. Yalamanchi being offered. Further, if Ms. Yalamanchi was truly irreplaceable, then presumably Monster would have sought the higher visa classification of an O-1 "extraordinary ability" temporary worker under 8 U.S.C. § 1101(a)(15)(O)(i).

With respect to Ms. Yalamanchi, as explained above, her claim that she will have to leave the country by September 28, 2019, is highly speculative and does not establish imminent harm under any objective analysis. See Sagarwala v. Cissna, 2019 WL 1649943 at * 3 (D.D.C. Apr. 16, 2019). In Sagarwala, the plaintiff sued under the Administrative Procedure Act, 5 U.S.C. § 706 *et seq*. ("APA") when her H-1B visa application was denied and, like Ms. Yalamanchi, sought an injunction to grant her all the benefits she would have received if the visa had been granted. Id. at * 1. The Sagarwala court denied a preliminary injunction because the plaintiff did not substantiate her allegations of irreparable harm with specific factual information. Id. at * 3.

The Sagarwala court also held that the loss of income is not *per se* irreparable. Id. at * 2. If it were, then "the irreparable harm requirement would be virtually nonexistent in cases against the government" because every disappointed applicant for an employment-based visa would be unable to recover his or her losses from an agency with sovereign immunity. Id. Here, Plaintiffs offer no specific information of irreparable harm for Ms. Yalamanchi other than the loss of her income. Thus, Plaintiffs have not satisfied their high burden of establishing a likelihood of immediate, irreparable injury.

C. **Plaintiffs Have Not Demonstrated a Likelihood of Success on the Merits**

Plaintiffs must also demonstrate that they are likely to succeed on their claim that USCIS arbitrarily denied the visa petition for a "technical web developer." See Winter,

4

555 U.S. at 20.  In the first place, there is some confusion as to whether the position is a web developer, or a "software engineer," because the latter position is the subject of the opinion of one of Plaintiffs' proffered experts, Professor Reddy.  (See Dkt # 1-4 pages 41-46.)  Adding to the confusion is the fact that the position in question was created for Ms. Yalamanchi, and she is the first person to hold this position at Monster.  (See Dkt # 1-3 page 15.)

With respect to the H-1B requirement that the position be in a "specialty occupation" requiring the attainment of a bachelor's degree in the specific specialty, see 8 C.F.R. § 214.2(h)(4)(i)(A),  Plaintiffs assert that they have submitted "job postings as []sufficient evidence [of] parallel positions for employers in similar positions."  Motion at 14.  These submitted job postings are found in the record as Plaintiffs' Exhibit F. (Dkt # 1-3 pages 43-76.)

Of Plaintiffs' 11 submitted job postings, only two (Experian UK and "esri") mention an engineering degree as satisfying their educational requirements, but both these job listings seek "senior web developers" which is a different position.  In addition, two of the 11 job listings, those for Channel Islands Surfboards and Pasadena City College, require a B.A. degree, but with no specific course of study whatsoever.  This is important because the requirement of only a general purpose Bachelor's degree will not justify granting a petition for an H-1B specialty occupation visa.  See Irish Help at Home LLC v. Melville, 2015 WL 848977 at * 5-6 (N.D.Cal. Feb. 24, 2015), aff'd 679 Fed.Appx. 634 (9th Cir. 2017).

Plaintiffs' remaining nine job listings require a B.A. in computer sciences or information systems, but Ms. Yalamanchi's degrees are in mechanical engineering from a university in India, and a two-year master's degree in industrial engineering from an American university.  See Motion at 3-4.  Plaintiffs rely on the reports of two paid professors for the proposition that these degrees are the equivalent of a B.A. degree in computer science or information systems but, as USCIS found, neither Professor Reddy, nor Professor Skevoulis submitted documentary evidence that Ms. Yalamanchi's degrees

directly relate to the position with Monster.  (Dkt # 1-1 at pages 4-5, 10-11.)  Moreover, the Professors relied on the position description provided by Monster, rather than a thorough study of the position.  (Id. at page 5.)

With respect to Professor Skevoulis, he avers that he has the "authority to grant college-level credit based on a candidate's foreign credentials, training and/or employment experience in Computer Science," (Dkt # 1-4 at page 50), but nowhere does he state that he has ever actually done so.  As to Professor Reddy, under his analysis, Ms. Yalamanchi's coursework in the following areas is somehow related to information systems studies:  English, English language lab, Engineering Physics, Engineering Chemistry, Engineering Economics, Metallurgy, and Environmental Studies.  (Dkt # 1-4 at pages 41-42.)  USCIS did, in fact, address the Professors' opinions, but gave them little weight in the exercise of its discretion.  (Dkt # 1-1 at pages 5-6.)

Based on the foregoing, and at this early stage of this case, it cannot be said that USCIS had no rational basis for denying Plaintiffs' petition.  See Friends of Santa Clara River v. U.S. Army Corps of Engineers, 887 F.3d 906, 920 (9th Cir. 2018) (the APA requires only a rational connection between the facts found and conclusions made by the defendant agency).

**D.      Plaintiffs' Requested Relief is Not Consistent with the Public Interest.**

The final two factors required for preliminary injunctive relief—balancing of the harm to the opposing party and the public interest—merge when the Government is the opposing party.  See, e.g., Nken v. Holder, 556 U.S. 418, 435 (2009).  The vague relief Plaintiffs seek, to "postpone the effects of the denial," together with the motion's references to the possibility that Plaintiff could be subject to removal, suggests that Plaintiffs seek to have this Court enjoin any attempt to commence removal proceedings against her.  However, Congress has prohibited judicial review of the decision to commence removal proceedings.  See 8 U.S.C. § 1252(g).

In addition, Congress has charged the Secretary of Homeland Security with the administration and enforcement of all immigration laws and gave the Secretary broad

discretion to regulate the employment of H-1B temporary workers. See 8 U.S.C. §§ 1103(a)(1), 1184(a)(1), (c)(1). Micro-managing a governmental entity's vested control over a statutory program, or enjoining the governmental entity from administering the statute it is charged with enforcing, constitutes injury to the Government and weighs against the entry of injunctive relief. Cf. New Motor Vehicle Bd. v. Orrin W. Fox Co., 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers)( "It also seems to me that any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.").

## IV.  CONCLUSION

For all of these reasons, Defendants request that the Court deny Plaintiffs' request for emergency relief and require the Plaintiffs to file a regularly noticed motion for a preliminary injunction.

Dated: May 12, 2019

Respectfully submitted,

NICOLA T. HANNA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section

  /s/ *David Pinchas*
DAVID PINCHAS
Assistant United States Attorney

Attorneys for Defendants